Troy Froderman (012717)
Rita Gara (037349)
FR LAW GROUP PLLC
4745 North 7th Street, Suite 210
Phoenix, AZ 85014
602-566-7425
trfroderman@frlawgroup.com
rgara@frlawgroup.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Rebecca Cruz,<br><br>                          Plaintiff,<br><br>vs.<br><br>State of Arizona, Department of Transportation,<br><br>                          Defendant. | Case No. CV-23-02383-PHX-SMM<br><br>**SECOND AMENDED COMPLAINT**<br><br><ul><li>**DISCRIMINATION ON THE BASIS OF DISABILITY**</li><li>**FAILURE TO PROVIDE REASONABLE ACCOMODATION**</li><li>**RETALIATION**</li></ul><br>(42 U.S.C. §§ 12101 et seq.; 29 U.S.C. § 794; A.R.S. 41 §§ 1461 et seq.)<br><br>**JURY TRIAL DEMAND** |

Plaintiff Rebecca Cruz alleges as follows:

**NATURE OF THE ACTION**

This is an action brought by Plaintiff Rebecca Cruz ("Cruz"), an individual employed by the State of Arizona, Department of Transportation ("ADOT"), pursuant to the Americans with Disabilities Act of 1990, as Amended, 42 U.S.C. §§ 12101 et seq. ("ADA") and its implementing regulations, 29 C.F.R. Part 1630, the Rehabilitation Act of 1973, as amended,

29 U.S.C. § 794 ("Rehabilitation Act"), and the Arizona Civil Rights Act ("ACRA"), A.R.S. 41 §§ 1461 et seq. to correct unlawful employment practices carried out on the basis of disability and to provide appropriate relief to Cruz. Cruz alleges that ADOT discriminated against her on the basis of disability by limiting Cruz in a way that adversely affected her employment opportunities and/or status, failing to reasonably, timely, or in good faith engage in the interactive process, and engaging in disparate treatment of Cruz. Cruz further alleges that ADOT failed to provide Cruz with a reasonable accommodation for her disability and retaliated against Cruz for participating in protected activity. Ms. Cruz has been harmed by ADOT's conduct.

**JURISDICTION AND VENUE**

1.       This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, Title I of the Americans with Disabilities Act of 1990, as Amended, 42 U.S.C. § 12117, the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

2.       Venue is proper in this district because the events or omissions giving rise to the claims, which are the subject of this action, occurred in this district. 28 U.S.C. § 1391.

3.       Prior to filing this action, Cruz timely exhausted her administrative remedies by jointly filing Charges of Discrimination with the Arizona Attorney General, Civil Rights Division, and the Equal Employment Opportunity Commission ("EEOC") in two separate but related filings identified as Charge No. 35A-2022-00455 and Charge No. 540-2022-03291.

4.    A "Notice of Right to Sue" Letter was issued to Cruz, relative to Charge No. 35A-2022-00455 on September 10, 2023.

5.    A "Notice of Right to Sue" Letter was issued to Cruz relative to Charge No. 540-2022-03291 on September 5, 2023.

6.    Cruz sent ADOT a Notice of Claim on October 14, 2022, and a supplemental Notice of Claim on August 3, 2023.

**PARTIES**

7.    Cruz is an individual who, at all relevant times herein mentioned, was a resident of the State of Arizona.

8.    Cruz has been employed by ADOT since March 1, 2021.

9.    Cruz is disabled as defined at 42 U.S.C. § 12102(1).

10.    ADOT is an Arizona state government agency responsible for providing an integrated and balanced state transportation system. A.R.S. § 28-331(A).

11.    ADOT has multiple offices throughout the state of Arizona and is headquartered in Phoenix, Arizona.

12.    At all relevant times, ADOT has been an "Employer" engaged in an industry affecting commerce as defined at 42 U.S.C. § 12111(5)(A).

13.    At all relevant times, ADOT has been a "covered entity" as defined at 42 U.S.C. § 12111(2).

14.    At all relevant times, ADOT has continuously employed fifteen (15) or more persons.

15.    At all relevant times, ADOT has continuously employed 500 or more persons.

16.    At all relevant times, ADOT qualified as a "program or activity receiving Federal financial assistance" as contemplated by 29 U.S.C. § 794.

## GENERAL ALLEGATIONS

17.    Cruz is a United States Military Veteran who served in the Air National Guard for twelve and a half years, from September 7, 2007 until she was medically discharged on April 1, 2020. During this time, she served close to 4 years active duty in the United States Air Force.

18.    While serving this country, Cruz experienced events that led to physical and/or mental impairments which form the basis of her disability.

19.    On March 1, 2021, Cruz began her employment as an Executive Consultant at ADOT in its Financial Management Services Division ("FMS"). Cruz' direct supervisor was Kristine Ward ("Ward"), ADOT's Chief Financial Officer.

20.    When Cruz started her position with ADOT, she worked 100% remotely.

21.    On April 7, 2021, the Department of Veterans Affairs, Veterans Benefits Administration, ("VA") issued a Ratings Decision after evaluating Cruz for posttraumatic stress disorder ("PTSD") and migraines.

22.    The VA found that Cruz' PTSD was 100% disabling.

23.    After reviewing its evidentiary record, the VA based Cruz' PTSD 100% disabling rating on: (1) anxiety; (2) chronic sleep impairment; (3) depressed mood; (4) difficulty in adapting to a work like setting; (5) difficulty in adapting to stressful circumstances; (6) difficulty in adapting to work; (7) difficulty in establishing and maintaining effective work and social relationships; (8) disturbances of motivation and mood;

(9) forgetting directions; (10) forgetting names; (11) forgetting recent events; (12) impaired impulse control; (13) impaired judgment; (14) inability to establish and maintain effective relationships; (15) mild memory loss; (16) near-continuous depression affecting the ability to function independently, appropriately and effectively; (17) near-continuous panic affecting the ability to function independently, appropriately and effectively; (18) neglect of personal appearance and hygiene; (19) occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood; (20) panic attacks more than once a week; (21) suicidal ideation; (22) suspiciousness.

24.     The VA concluded that Cruz had a total service-connected disability that was permanent in nature.

25.     The VA also held that the migraines suffered by Cruz were 50% disabling and that Cruz experienced very frequent completely prostrating and prolonged attacks.

26.     In early March of 2022, Ward told Cruz that ADOT was changing her schedule from 100% remote to a hybrid schedule and Cruz would be required to work in office two (2) days per week; the rest of Cruz' department was expected to work a hybrid schedule with two (2) in-office days as well.

27.     The new hybrid schedule was set to start April 18, 2022.

28.     Spending time in public places and/or driving or being a passenger in a vehicle triggered Cruz' PTSD symptoms, the aftermath of which could last many hours and require lengthy periods of safety from triggers to gain emotional equilibrium.

29.     The onset of PTSD symptoms often triggered Cruz' migraines which would incapacitate her completely.

30. Cruz sought permission from Ward and Deputy Chief Financial Officer Tim Newton ("Newton") to use her "flex" day (Cruz was working four ten-hour days with the fifth day off as a "flex" day) as one of her in-office days in an effort to reduce her exposure to harmful conditions, but she was denied the request.

31. Cruz would later learn that while *she* was denied the flex day request, four ADOT employees in her department *were* allowed to use a flex day as one of their in-office days.

32. When Cruz asked Newton about the disparate treatment, Newton advised Cruz not to push the issue with Ward as Ward would then take the benefit away from the other four, with the implication being that Cruz would get blamed for the four losing that benefit.

33. Newton confirmed that although the four employees got to use their flex day to avoid coming into the office on one of the two in-office days, if Cruz wanted the same opportunity, she would have to go through ADOT's Civil Rights Office ("CRO") and file a request for an accommodation based on her disability.

34. ADOT's CRO handles the Reasonable Accommodation Request Process.

35. On March 8, 2022, Cruz filed an ADA Reasonable Accommodation Request seeking an accommodation, based on her disability, to allow her to remain a 100% remote worker on a permanent basis. She described the limitation interfering with her ability to perform her job as driving to the office and being physically present at work two days a week because it would significantly trigger her disabilities.

36. Pursuant to ADOT's policies and procedures for requesting and receiving a reasonable accommodation, the employee must participate in an interactive process whereby

the employee meets with a CRO officer who will facilitate an interactive process between the employee and the supervisor to determine if a reasonable accommodation can be provided to the employee.

37.    During the interactive process, the employee must communicate to the CRO officer how the disability affects the employee's ability to perform the essential functions of the job, and identify what accommodations are necessary.

38.    The CRO officer may ask for medical documentation of the employee's physical or mental limitations to support the request.

39.    As part of ADOT's interactive process, Cruz met with CRO personnel who asked her to answer questions about the nature and genesis of her PTSD – outside the parameters of describing how the PTSD affected her ability to perform the essential functions of her job.

40.    Being forced to share intimate details of her traumatic military experience with people she barely knew, who were non-medical professionals, was triggering for Cruz, felt unsafe and caused her distress.

41.    On March 21, 2022, Cruz shared her interactive process experience with Ward, detailing how the CRO office brought up triggering events and forced her to share more than she was comfortable with. Ward responded, "I am sorry you went through that." When Cruz responded, "thank you", Ward shot back, "Don't thank me yet!"

42.    On multiple occasions, subsequent to Cruz filing for the accommodation, Ward let Cruz know she was not a fan of the remote work option. Cruz noticed Ward's attitude, demeanor, and communication change negatively towards her, often times feeling hostile.

43.    ADOT's CRO asked Cruz to provide medical documentation to support her request for a reasonable accommodation.

44.    ADOT utilized its own pre-printed "Medical Status Report" forms and "Supplemental Medical Status Report" forms that Cruz provided to her evaluating or treating medical professionals to fill out.

45.    Cruz provided the CRO with medical documentation from six different medical providers including VA staff, Glenda Weisman, MD, Melynda Bosch, LCSW, Ned Bratspis, MA, LMFT, Kristin Plyer, PA-C, and Dr. Christy Olloh, DNP, MSN, RNP, PMHNP- BC.

46.    As previously described in detail above, the VA's office described Cruz' PTSD as 100% disabling and her migraines as 50% disabling; the VA also identified the various ways in which Cruz' disabilities impaired or limited her activities.

47.    Doctor Glenda Weisman indicated Cruz suffered from a permanent PTSD impairment, recommending that ADOT provide permanent remote work as a reasonable accommodation for Cruz.

48.    Doctor Weisman found and informed ADOT that Ms. Cruz suffers from PTSD and migraines, that Cruz suffers from a chronic, total, permanent, and lifelong disability, that Cruz could accomplish her full duties if she was allowed to work exclusively remotely, that there was no other appropriate alternative, that Cruz's condition is worsened by traveling to in-person employment, and that Cruz would need lifelong accommodations.

49.    Melynda Bosch, LCSW, indicted that Cruz suffered from chronic PTSD & Major Depressive Disorder, moderate, and that the impairment was permanent; Bosch recommended permanent remote work.

50. Bosch found and informed ADOT that travel would cause Cruz extreme mental health symptoms and should be avoided at all costs, that Cruz could fulfill job requirements in a remote capacity, that if onsite work is pursued Ms. Cruz will have panic episodes, migraines, anxiety, severe fight/flight responses which will severely impact her performance and that she (Bosch) was unable to safely recommend any alternative accommodation to permanent remote work.

51. Ned Bratspis, MA, LMFT, indicated that Cruz suffered from chronic PTSD and Major Depressive Disorder and that her impairment was recurrent and permanent; Bratspis recommended permanent remote work.

52. Bratspis found and informed ADOT that driving to and from work or even being driven to work could be harrowing for Cruz, that Cruz experiences moderate to severe anxiety episodes when spending time in public places and when traveling in vehicles, that the aftermath of Cruz' anxiety episodes could last many hours and requires lengthy time periods of safety from triggers in order to regain emotional equilibrium, that ADOT accommodations should be inclusive of the chronic difficulty Cruz faces with long term PTSD; Bratspis knew of no other alternative accommodation.

53. Kristin Plyer, PA-C, indicated that Cruz suffered from migraines which were a permanent impairment; Plyer recommended permanent remote work as an accommodation.

54. Dr. Christy Olloh, DNP, MSN, RNP, PMHNP- BC, indicated that Cruz suffered from Major Depressive Disorder, Generalized Anxiety Disorder, and Post-traumatic Stress Disorder, and that due to symptoms, Ms. Cruz should work from home.

55.    Weisman, Bosch, Bratspis, and Plyer all answered in the affirmative when asked, via the Medical Status Report, whether Cruz' impairment substantially limited any major life activities or major bodily functions.

56.    Impacted major life activities were identified (in summary) as bending, caring for self, concentrating, eating, hearing, interacting with others, learning, lifting, reading, seeing, sitting, sleeping, standing, thinking, walking, and working; affected major bodily functions included (in summary) brain, bowel, digestive, neurological, and special sense organs and skin functions.

57.    Cruz' medical providers indicated that Cruz could perform the essential functions of her job with a permanent remote work accommodation.

58.    Subsequent to Cruz' request for an accommodation and Ward's expression of dislike for Cruz' remote work option, Ward began skipping one on one meetings that had been scheduled for her and Cruz.

59.    Ward also began uninviting Cruz from certain meetings, but then assigning Cruz work that was born from those meetings, leading Cruz to be inadequately briefed or informed about the work.

60.    On April 27, 2022, Cruz received a performance evaluation from Ward.

61.    Cruz believed she was scored unfairly in some of the categories; when Cruz raised the issue, Ward said to Cruz, "If you are so unhappy then you should…" stopping short before finishing the sentence, but with the inference being "quit".

62.    Newton would later admit that he and Ward had discussed manipulating Cruz' performance evaluation score because Ward was worried about a retaliation claim.

63. On April 27, 2022, Cruz filed an ADOT Discrimination Incident Report (ADIR) which documented the ways she had been treated differently from other employees because of her disability and the ways in which she had been treated worse since seeking a reasonable accommodation.

64. On May 12, 2022, ADOT determined that an investigation into Cruz' claims was not warranted because the allegations did not "rise to the level of a policy violation that warrants an investigation."

65. On May 16, 2022, Cruz met with Danielle Valentine and Krystal Smith from ADOT's CRO. Cruz was informed that they considered two of Cruz's disabilities, her PTSD and her migraines, when evaluating her accommodation request. They said that they were denying her request for remote work but would allow her to use the "nursing" room if she needed a break due to any of her symptoms. They advised that they were preparing a determination memo and would check back in a month or two to make sure everything was fine.

66. On May 23, 2022, Cruz participated in another interactive meeting with the CRO during which Cruz asked whether anyone with a medical background had reviewed the medical documentation Cruz had provided in support of her accommodation request. The CRO said no, they reviewed the documentation themselves in coming to the denial determination.

67. Cruz was further advised by Krystal Smith of the CRO that PTSD was a temporary condition.

68.    Cruz provided supplemental documentation from multiple providers to ADOT's CRO which further underscored the need and appropriateness for permanent remote work as an accommodation as well as the inappropriateness of ADOT's insistence that Cruz work in-office.

69.    Cruz received a letter from ADOT, dated August 2, 2022, that confirmed the CRO's denial of Cruz' request for a permanent accommodation, providing that Cruz could continue remote work until February 13, 2023, with a stated goal of returning Cruz back to the office two full days per week.

70.    The August 2nd letter also required that Cruz provide status updates to the CRO upon request.

71.    ADOT did not find that granting Cruz permanent remote work would create an undue hardship.

72.    ADOT also failed to explain why, against all medical advice, it was pursuing a goal of having Cruz return to the office.

73.    On August 3, 2022, in an effort to protect herself from the discriminatory and retaliatory environment she found herself in, and in an effort to find another accommodation for her disability since ADOT had denied her the remote work option, Cruz sought a lateral transfer into one of two open positions.

74.    The new positions would have allowed her to work 100% remotely.

75.    Cruz possessed the requisite qualifications for the positions and the grade and pay were similar to Cruz' current position.

12

76.    Cruz reached out to that department's manager, Lisa Pounds ("Pounds") indicating an interest and desire to interview for the job, and the request was well received.

77.    Pounds told Cruz that she (Pounds) was going to look into getting Cruz into the interview process.

78.    Pounds was aware of Cruz' discrimination claims.

79.    Approximately a month and a half later, Cruz found out that the positions had been filled when an email she received announced the new hires.

80.    Cruz had never been offered an opportunity to interview for either position.

81.    Shortly thereafter, Cruz was given an "opportunity" to lateral transfer to a position that was a two-level grade drop and salary cut of $40,000.

82.    Cruz did not accept the offer.

83.    Cruz continued to suffer adverse treatment from Ward.

84.    Ward falsely accused Cruz of complaining about her workload.

85.    Ward would "forget" that Cruz wasn't going to be attending a work event and then ask multiple people where Cruz was, implying that Cruz should have been at the event.

86.    Ward has chastised Cruz for her tone or attitude relative to things Cruz expressed in private meetings while excusing other co-workers' poor public attitudes.

87.    Prior to requesting her accommodation, Cruz was not treated this way.

88.    On September 29, 2022, Cruz submitted another ADIR to address the continuing discrimination and retaliation.

89.    On October 7, 2022, Cruz submitted an ADIR to address the lateral transfer interview opportunity denial.

90.    In a letter dated November 8, 2022, ADOT determined, relative to the lateral transfer interview opportunity that there was not enough information to support a full investigation into Cruz' allegations.

91.    In a second letter dated November 8, 2022, ADOT indicated it was going to investigate Cruz' allegations of discrimination and retaliation against Ward.

92.    As Cruz' February termination of full-time remote work was approaching, she requested an extension of the accommodation and provided consistent medical documentation of her continuing need.

93.    Cruz received a 30-day extension, after which ADOT would require Cruz to start coming into the office; ADOT had not received any medical documentation, from any medical provider, indicating that this was appropriate or safe for Cruz.

94.    Because of the brief accommodation extension Cruz received, she was forced to re-initiate the accommodation request process a couple weeks later on March 6, 2023.

95.    The very next day, March 7, 2023, Ward, in a meeting attended by Ms. Cruz and other co-workers, complained about the uncertainty of keeping a particular schedule because she wasn't sure how many more "investigations" were going to be conducted, a clear reference to Cruz' complaint and accommodation processes.

96.    This caused Cruz great trepidation about any continued engagement in such activities and the affect it would have on her job if she continued to participate in the accommodation request and complaint processes.

97.    In a letter dated February 7, 2023, ADOT informed Cruz that her allegations of discrimination and retaliation were unsubstantiated.

98.    In witness statements obtained during ADOT's investigation into Cruz' allegations, an ADOT employee said they observed a shift in Ward's working relationship with Cruz and that one of the reasons it might have happened was because Cruz requested an exemption from returning to in-office work.

99.    In his witness statements, Newton admitted he and Ward discussed manipulating Cruz' performance evaluation score because they were worried about a retaliation claim by Cruz and, that Newton had seen Ward treat Cruz differently than other employees and that Ward watches what she says more carefully when around Cruz.

100.    In statements made by Ward, Ward admitted complaining about the "investigations" but said that Cruz took it the wrong way.

101.    In June of 2023, Cruz was required to once again meet with the CRO to discuss her March 6, 2023 request for a reasonable accommodation.

102.    Cruz' previously identified (by six medical providers) *chronic and permanent* disability had not changed however the CRO had a lot of questions for Cruz about her disability.

103.    The CRO did not limit their questions, as they should have, to how her disability affected her ability to perform the essential functions of her job (answers they had already previously received), but instead focused their questions on how her disability affected Cruz outside of work and in her personal life.

15

104.    Cruz had previously informed the CRO that questions into the nature and cause of her PTSD, asking her to remember and re-live certain events, was triggering and felt unsafe; it also seemed unnecessary given that the medical reports the CRO had requested and received provided answers to all the relevant questions they could have.

105.    Despite having more than enough documentation identifying Cruz' disability, how the disability affected her ability to do her job, the permanent and chronic nature of the disability, and a unanimous recommended as to the *only* reasonable accommodation, the CRO persisted in putting Cruz through repeated unnecessary and triggering interviews only to provide short-term temporary accommodations for unpredictable lengths of time knowing that her disability was chronic, permanent and life-long.

106.    Other similarly situated employees have received longer-in-length remote-work accommodations for temporary needs.

107.    As of the date of this filing, Cruz has not received a determination as to whether she will be granted the reasonable accommodation she requested back on March 6, 2023.

108.    ADOT's discrimination, retaliation, and failure to provide a reasonable accommodation have been continuous and are ongoing.

## COUNT I

### (ADA - Discrimination on the Basis of Disability)

109.    Cruz incorporates by reference and restates each of the paragraphs above as if fully set forth herein.

110.    The Americans with Disabilities Act of 1990, As Amended ("ADA"), recognizes that individuals with physical or mental disabilities are often prevented from fully

16

participating in all aspects of society, including employment, because of discrimination. 42 U.S.C. § 12101.

111.    The ADA mandates the elimination of discrimination against individuals with disabilities, provides clear, strong, and enforceable standards to address discrimination against individuals with disabilities, and seeks to ensure that the Federal Government plays a central role in enforcing the standards established by the Act for the benefit of individuals with disabilities. *Id*.

112.    The ADA prohibits a "covered entity" from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

113.    Under the ADA, discriminating against a qualified individual on the basis of disability includes, among other things, "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee" and "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. §§ 12112(b)(1) & (5).

114.    At all relevant times, Cruz was an "employee" pursuant to 42 U.S.C. § 12111(4).

17

115. At all relevant times, Cruz was an employee with a "disability" that substantially limited one or more "major life activities" pursuant to 42 U.S.C. §§ 12102(1) & (2).

116. At all relevant times, Cruz was a "qualified individual" capable of performing the essential functions of her job, and/or the job she desired, with or without a reasonable accommodation, pursuant to 42 U.S.C. § 12111(8).

117. At all relevant times, ADOT was a "covered entity" pursuant to 42 U.S.C. §§ 12111(2).

118. ADOT knew that Cruz had a disability covered under the ADA.

119. ADOT has discriminated against Cruz on the basis of disability.

120. Cruz suffered adverse actions by ADOT because of her disability, actions that would not have happened but for her disability, including denying Cruz privileges offered to other similarly situated employees or individuals including, as pled above, her use of flex days, denial of the lateral transfer opportunity then offering an inferior position, failing to reasonably, timely, or in good faith engage in the interactive process, denying Cruz a reasonable accommodation, forcing Cruz to repeat the accommodation process indefinitely and repeatedly for a documented permanent disability, forcing Cruz to answer irrelevant and triggering questions about her disabilities, making remarks about Cruz in the presence of other ADOT employees in a manner that negatively affected Cruz' status and opportunities including remarks about her absence at work events, her desire for remote work, and her participation in the complaint process, denying Cruz training opportunities by canceling

Cruz' one on one meetings with Ward, and excluding Cruz from meetings that provided crucial information relative to job assignments Ward would assign to Cruz.

121.    Similarly situated individuals outside of Cruz' protected class were treated more favorably as evidenced by the four employees in Cruz' department who were able to utilize their flex day on in-office days, employees who received longer-in-length remote work accommodations, and an employee who wasn't reprimanded for tone when Cruz was.

122.    Cruz was treated differently and in a negative manner since requesting an accommodation based on her disabilities and since engaging in the discrimination complaint process.

123.    ADOT's purported basis for treating Cruz in the manner described in the preceding allegations is merely pretextual.

124.    ADOT's discrimination on the basis of disability has caused Cruz substantial harm including loss of opportunity, job training, advancement, hiring, and employment privileges, she has suffered and continues to suffer humiliation, emotional distress, physical distress, physical and mental pain and anguish, emotional harm, loss of sleep, aggravated psychiatric conditions, inconvenience, strained relationships, reputational damage,  and decreased enjoyment of life.

125.    ADOT engaged in said discriminatory practices with malice or with reckless indifference to Cruz' federally protected rights.

**COUNT II**

**(ACRA – Discrimination on the Basis of Disability)**

126.    Cruz incorporates by reference and restates each of the paragraphs above as if fully set forth herein.

127.    ACRA prohibits the discrimination against any individual on the basis of the individual's disability. A.R.S. 41 § 1463(E).

128.    At all relevant times, Cruz was an "employee" with a "disability" that substantially limited one or more "major life activities" pursuant to A.R.S. 41 § 1461(5), (6), & (10).

129.    At all relevant times, Cruz was a "qualified individual" who, with or without reasonable accommodation, was capable of performing the essential functions of the employment position that she held. A.R.S. 41 § 1461(12).

130.    At all relevant times, ADOT was an "employer" pursuant to A.R.S. 41 § 1461(7).

131.    ADOT has discriminated against Cruz on the basis of disability and in violation of the ACRA.

132.    Cruz suffered adverse actions by ADOT because of her disability, actions that would not have happened but for her disability, including denying Cruz privileges offered to other similarly situated employees or individuals including, as pled above, her use of flex days, denial of the lateral transfer opportunity then offering an inferior position, failing to reasonably, timely, or in good faith engage in the interactive process, denying Cruz a reasonable accommodation, forcing Cruz to repeat the accommodation process indefinitely and repeatedly for a documented permanent disability, forcing Cruz to answer irrelevant and triggering questions about her disabilities, making remarks about Cruz in the presence of

other ADOT employees in a manner that negatively affected Cruz' status and opportunities including remarks about her absence at work events, her desire for remote work, and her participation in the complaint process, denying Cruz training opportunities by canceling Cruz' one on one meetings with Ward, and excluding Cruz from meetings that provided crucial information relative to job assignments Ward would assign to Cruz.

133.    Similarly situated individuals outside of Cruz' protected class were treated more favorably as evidenced by the four employees in Cruz' department who were able to utilize their flex day on in-office days, employees who received longer-in-length remote work accommodations, and an employee who wasn't reprimanded for tone when Cruz was.

134.    Cruz was treated differently and in a negative manner since requesting an accommodation based on her disabilities and since engaging in the discrimination complaint process.

135.    ADOT's purported basis for treating Cruz in the manner described in the preceding allegations is merely pretextual.

136.    ADOT's discrimination on the basis of disability has caused Cruz substantial harm including loss of opportunity, job training, advancement, hiring, and employment privileges, she has suffered and continues to suffer humiliation, emotional distress, physical distress, physical and mental pain and anguish, emotional harm, loss of sleep, aggravated psychiatric conditions, inconvenience, strained relationships, reputational damage, and decreased enjoyment of life.

137.    ADOT engaged in said discriminatory practices with a willful and wanton disregard of Cruz' rights under the ACRA.

21

## COUNT III

### (Rehabilitation Act – Discrimination on the Basis of Disability)

138.    Cruz incorporates by reference and restates each of the paragraphs above as if fully set forth herein.

139.    Section 504 of the Rehabilitation Act prohibits the discrimination of an otherwise qualified individual, on the basis of her disability, by any program or activity receiving federal financial assistance. 29 U.S.C. § 794.

140.    At all relevant times, ADOT received federal funding pursuant to the Federal Aid Highway Program (FAHP).

141.    ADOT denied Cruz the opportunity to participate or benefit from any program or activity receiving Federal financial assistance.

142.    Cruz suffered adverse actions by ADOT because of her disability, actions that would not have happened but for her disability, including denying Cruz privileges offered to other similarly situated employees or individuals including, as pled above, her use of flex days, denial of the lateral transfer opportunity then offering an inferior position, failing to reasonably, timely, or in good faith engage in the interactive process, denying Cruz a reasonable accommodation, forcing Cruz to repeat the accommodation process indefinitely and repeatedly for a documented permanent disability, forcing Cruz to answer irrelevant and triggering questions about her disabilities, making remarks about Cruz in the presence of other ADOT employees in a manner that negatively affected Cruz' status and opportunities including remarks about her absence at work events, her desire for remote work, and her participation in the complaint process, denying Cruz training opportunities by canceling

Cruz' one on one meetings with Ward, and excluding Cruz from meetings that provided crucial information relative to job assignments Ward would assign to Cruz.

143.    Similarly situated individuals outside of Cruz' protected class were treated more favorably as evidenced by the four employees in Cruz' department who were able to utilize their flex day on in-office days, employees who received longer-in-length remote work accommodations, and an employee who wasn't reprimanded for tone when Cruz was.

144.    Cruz was treated differently and in a negative manner since requesting an accommodation based on her disabilities and since engaging in the discrimination complaint process.

145.    ADOT's purported basis for treating Cruz in the manner described in the preceding allegations is merely pretextual.

146.    ADOT's discrimination on the basis of disability has caused Cruz substantial harm including loss of opportunity, job training, advancement, hiring, and employment privileges, she has suffered and continues to suffer humiliation, emotional distress, physical distress, physical and mental pain and anguish, emotional harm, loss of sleep, aggravated psychiatric conditions, inconvenience, strained relationships, reputational damage, and decreased enjoyment of life; ADOT engaged in said discriminatory practices with a willful and wanton disregard of Cruz' rights under the Rehabilitation Act.

## COUNT IV

### (ADA - Failure to Provide Reasonable Accommodation)

147.    Cruz incorporates by reference and restates each of the paragraphs above as if fully set forth herein.

23

148.    Under the ADA, discriminating against a qualified individual on the basis of disability includes, among other things, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5).

149.    At all relevant times, Cruz was an employee and qualified individual with a disability that substantially limited one or more major life activities pursuant to 42 U.S.C. §§ 12102(1) & (2) and 12111(4) & (8).

150.    ADOT knew of Cruz' disability and her physical and/or mental limitations and received medical documentation from six separate medical providers identifying Cruz' disabilities, and the recommended accommodation.

151.    Cruz requested a reasonable accommodation, specifically permanent remote work.

152.    Cruz provided medical documentation that indicated permanent remote work was an appropriate accommodation and the only appropriate accommodation.

153.    Cruz had been effectively working 100% remotely since the inception of her employment with ADOT and continues to this day.

154.    Cruz is able to perform the essential functions of her position with a reasonable accommodation.

155.    ADOT denied Cruz a reasonable accommodation.

156.    Permanent remote work did not impose an undue hardship on ADOT.

157. The "accommodation" ADOT purported to offer included, against medical recommendation, a goal of returning to work in-office.

158. ADOT's reasonable accommodation request process is not reasonable, timely, nor conducted in good faith.

159. ADOT's conduct has caused Cruz substantial harm including loss of opportunity, job training, advancement, hiring, and employment privileges, she has suffered and continues to suffer humiliation, emotional distress, physical distress, physical and mental pain and anguish, emotional harm, loss of sleep, aggravated psychiatric conditions, inconvenience, strained relationships, reputational damage, and decreased enjoyment of life.

160. ADOT engaged such conduct with malice or with reckless indifference to Cruz' federally protected rights.

**COUNT V**

**(ACRA - Failure to Provide Reasonable Accommodation)**

161. Cruz incorporates by reference and restates each of the paragraphs above as if fully set forth herein.

162. Under the ACRA, discriminating against a qualified individual on the basis of disability includes, among other things, "failing or refusing to reasonably accommodate an individual's disability." A.R.S. § 41-1463(E).

163. At all relevant times, Cruz was an employee and qualified individual with a disability that substantially limited one or more major life activities pursuant to A.R.S. § 41-1461(5), (6), (10), and (12).

25

164.    ADOT knew of Cruz' disability and her physical and/or mental limitations and received medical documentation from six separate medical providers identifying Cruz' disabilities, and the recommended accommodation.

165.    Cruz requested a reasonable accommodation, specifically permanent remote work.

166.    Cruz provided medical documentation that indicated permanent remote work was an appropriate accommodation and the only appropriate accommodation.

167.    Cruz had been effectively working 100% remotely since the inception of her employment with ADOT and continues to this day.

168.    Cruz is able to perform the essential functions of her position with a reasonable accommodation.

169.    ADOT denied Cruz a reasonable accommodation.

170.    Permanent remote work did not impose an undue hardship on ADOT.

171.    The "accommodation" ADOT purported to offer included, against medical recommendation, a goal of returning to work in-office.

172.    ADOT's reasonable accommodation request process is not reasonable, timely, nor conducted in good faith.

173.    ADOT's conduct has caused Cruz substantial harm including loss of opportunity, job training, advancement, hiring, and employment privileges, she has suffered and continues to suffer humiliation, emotional distress, physical distress, physical and mental pain and anguish, emotional harm, loss of sleep, aggravated psychiatric conditions, inconvenience, strained relationships, reputational damage, and decreased enjoyment of life.

174.    ADOT engaged such conduct with malice or with reckless indifference to Cruz' rights.

## COUNT VI

### (ADA - Retaliation)

175.    Cruz incorporates by reference and restates each of the paragraphs above as if fully set forth herein.

176.    The ADA prohibits retaliation or discrimination against any individual who opposes any unlawful act or practice under the ADA or against an individual who makes a charge, testifies, or participates in a related investigation, proceeding or hearing. 42 U.S.C. § 12203(a).

177.    Cruz suffered retaliation for seeking an accommodation, participating in ADOT's complaint process, and/or filing a complaint with the Arizona Attorney General, Civil Rights Division, and the Equal Employment Opportunity Commission including suffering different, negative and/or hostile treatment subsequent to engaging in said activities, being singled out for reprimands when others weren't, being denied the opportunity to apply for a desired lateral transfer and instead being offered a lateral transfer that would diminish her status and pay, having one on one meetings with supervisor revoked, being falsely accused of complaining about her workload, being asked repeated, irrelevant and triggering questions about her disabilities, having supervisor make comments to other employees about her absence at events even though Cruz wasn't supposed to be attending, having supervisor complain in open meeting with other employees about the number of investigations that had occurred and how it was going to negatively impact scheduling, and being forced to

repeatedly apply for the same accommodation and engage in multiple interviews with the CRO office despite having provided them with beyond adequate documentation of her disabilities.

178.  ADOT's purported basis for treating Cruz in the manner described in the preceding allegations is merely pretextual.

179.  ADOT's retaliation has caused Cruz substantial harm including loss of opportunity, job training, advancement, hiring, and employment privileges, she has suffered and continues to suffer humiliation, emotional distress, physical distress, physical and mental pain and anguish, emotional harm, loss of sleep, aggravated psychiatric conditions, inconvenience, strained relationships, reputational damage, and decreased enjoyment of life.

180.  ADOT engaged in said retaliatory and discriminatory practices with malice or with reckless indifference to Cruz' federally protected rights.

## COUNT VII

### (ACRA - Retaliation)

181.  Cruz incorporates by reference and restates each of the paragraphs above as if fully set forth herein.

182.  The ACRA prohibits retaliation or discrimination against any individual who opposes any unlawful act or practice under the ADA or against an individual who makes a charge, testifies, or participates in a related investigation, proceeding or hearing. A.R.S. § 41-1464(A).

183.  Cruz suffered retaliation for seeking an accommodation, participating in ADOT's complaint process, and/or filing a complaint with the Arizona Attorney General,

Civil Rights Division, and the Equal Employment Opportunity Commission including suffering different, negative and/or hostile treatment subsequent to engaging in said activities, being singled out for reprimands when others weren't, being denied the opportunity to apply for a desired lateral transfer and instead being offered a lateral transfer that would diminish her status and pay, having one on one meetings with supervisor revoked, being falsely accused of complaining about her workload, being asked repeated, irrelevant and triggering questions about her disabilities, having supervisor make comments to other employees about her absence at events even though Cruz wasn't supposed to be attending, having supervisor complain in open meeting with other employees about the number of investigations that had occurred and how it was going to negatively impact scheduling, and being forced to repeatedly apply for the same accommodation and engage in multiple interviews with the CRO office despite having provided them with beyond adequate documentation of her disabilities.

184.    ADOT's purported basis for treating Cruz in the manner described in the preceding allegations is merely pretextual.

185.    ADOT's retaliation has caused Cruz substantial harm including loss of opportunity, job training, advancement, hiring, and employment privileges, she has suffered and continues to suffer humiliation, emotional distress, physical distress, physical and mental pain and anguish, emotional harm, loss of sleep, aggravated psychiatric conditions, inconvenience, strained relationships, reputational damage, and decreased enjoyment of life.

186.    ADOT engaged in said retaliatory and discriminatory practices with malice or with reckless indifference to Cruz' rights.

**PRAYER FOR RELIEF**

WHEREFORE Cruz prays for judgment and relief against ADOT as follows:

A.     Granting a permanent injunction enjoining Defendant from engaging in employment practices which discriminate on the basis of disability;

B.     Granting a permanent injunction enjoining Defendant from deciding a request for a reasonable accommodation without examining whether such request would cause an undue burden;

C.     Ordering Defendant to institute and carry out policies, practices, and programs to ensure a safe, fair, and timely process for evaluating requests for a reasonable accommodation;

D.     Declaring that the actions of the Defendant constituted unlawful discrimination;

E.     Finding ADOT liable for discrimination on the basis of disability;

F.     Finding ADOT liable for failure to provide reasonable accommodation;

G.     Finding ADOT liable for retaliation;

H.     Awarding Cruz damages including compensatory damages, front pay, and other damages allowed pursuant to 42 U.S.C. § 12117(a), 42 U.S.C. § 1981a(a)(2) & (b), A.R.S. § 41-1481(G), and any other relevant law, in an amount to be determined at trial;

I.     Awarding Cruz punitive damages, pursuant to 42 U.S.C. § 12117(a), 42 U.S.C. § 1981a(a)(2) & (b)(1), and A.R.S. § 41-1481(G), in an amount to be determined at trial;

J.     Awarding Cruz attorneys' fees and costs pursuant to 42 U.S.C. § 12205 and A.R.S. § 41-1481(J); and

K.     Ordering any other such relief as this Court deems fair and just.

30

DATED this 13th day of June 2024.

FR LAW GROUP PLLC

By:_____

Troy Froderman, Esq.
Rita Gara, Esq.
*Attorneys for Plaintiff*

I certify that I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing this 13th day of June 2024, and service on:

Ann Hobart, Esq.
Michelle Kunzman, Esq.
Jordan Kendall, Esq.
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004
Ann.Hobart@azag.gov
Michelle.Kunzman@azag.gov
Jordan.Kendall@azag.gov
EmploymentLaw@azag.gov

*/s/   Rita M. Gara*_____