Ann Hobart, Bar No. 019129
Michelle Kunzman, Bar No. 024134
Jordan Kendall, Bar No. 038647
Assistant Attorneys General
Arizona Attorney General's Office
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone:  (602) 542-8347
Telephone:  (602) 542-7673
Telephone:  (602) 542-7687
Facsimile:   (602) 542-7644
Ann.Hobart@azag.gov
Michelle.Kunzman@azag.gov
Jordan.Kendall@azag.gov
EmploymentLaw@azag.gov

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rebecca Cruz, | Case No:  CV23-02383-PHX-SHD |
| Plaintiff, | **MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| State of Arizona, Department of Transportation, | |
| Defendant. | |

In March 2021, the Arizona Department of Transportation ("ADOT") hired Plaintiff Rebecca Cruz ("Cruz") as an Executive Consultant. Cruz was hired with the expectation and knowledge that she would work at ADOT's headquarters once ADOT's COVID-19 necessitated telework ended. In 2022, ADOT announced that employees were to return to the office two days a week. Cruz immediately filed an accommodation request seeking to remain a telework employee, a request that ADOT continuously accommodated throughout the interactive processes until authorizing Cruz to telework indefinitely. Despite receiving everything she asked for, Cruz alleges ADOT failed to provide her with a reasonable accommodation and that the interactive process subjected

her to discrimination or retaliation under the Americans with Disabilities Act ("ADA"), the Arizona Civil Rights Act ("ACRA"), and the Rehabilitation Act of 1973 ("Rehab Act").

Defendant State of Arizona requests summary judgment on all of Cruz's alleged claims. Her failure to accommodate claims fail because ADOT continuously engaged in the interactive process and granted her requested accommodations. Her discrimination and retaliation claims fail because she has no evidence that she suffered an adverse employment action because of her disability or because she engaged in protected activity. On the contrary, the record shows that ADOT went above and beyond to accommodate and support Cruz throughout the interactive process and throughout her employment. Accordingly, summary judgment is required because there are no genuine issues of material fact and the State is entitled to judgment as a matter of law.  This motion is supported by the following Memorandum of Points and Authorities and the Court's record.

<u>**Memorandum of Points and Authorities**</u>

**I.     Factual Background.**

**A.  Cruz's First Year Performance at ADOT.**

In December 2020, Cruz applied to work for ADOT as an Executive Consultant. (Ex. 1 [Cruz Dep. Trans.] at 12:19-13:18; Ex. 2 [Cruz Dep. Ex. 1, Employment Application (DF01260-DF01266)]) On March 1, 2021, Cruz began work as an Executive Consultant in the Financial Management Services division ("FMS") where her direct supervisor was Kristine Ward. (Doc. 33 [Second Amended Complaint], ¶ 19) Cruz was hired to work in-office although, when she started, ADOT was still allowing its employees to work remotely due to the COVID-19 pandemic. (Ex. 3 [Lucero Dep. Trans.] at 49:24-50:5; Ex. 4 [Cruz Offer Letter (DF00303-DF00304)]; Ex. 5 [Cruz's Response to ADOT's Request for Admission] at 3:23-26; Doc. 33, ¶ 20) One of Cruz's first tasks was to assist ADOT's FMS division in returning employees to the office. (Ex. 6 [Cruz: Return to Work (DF00032-DF00034)]) In March 2022, FMS announced that it

would be transiting to the hybrid work model that Cruz helped craft throughout her first year at ADOT. (Ex. 7 [FMS Return to Work (DF00312)]; Ex. 14 [Cruz Dep. Ex. 4, First Interactive Meeting Memo (DF00579-DF00588)] at 2)

Cruz's performance during her first year at ADOT met, but did not exceed, expectations. (Ex. 5 at 4:22-26; Ex. 8 [Cruz 2021 Performance Evaluation (DF00036-DF00043)]) She received a performance evaluation of 2.45 out of 3 for the performance period of March 2021-March 2022. (Ex. 5 at 4:22-26; Ex. 8 [Cruz 2021 Performance Evaluation (DF00036-DF00043)])

**B. ADOT's Civil Rights Office and the Interactive Process.**

The employees in ADOT's Civil Rights Office ("CRO") are trained to manage a variety of civil rights compliance issues, complaints, and requests. (Ex. 3 at 14:7-22, 16:12-17:17; Ex. 9 at 36:18-37:3) The CRO handles requests from ADOT employees for reasonable accommodations on a case-by-case basis through the interactive process. (Ex. 3 at 21:15-24:13; Ex. 9 [Valentine Dep. Trans.] at 17:18-18:7, 32:4-33:3) A reasonable accommodation is a "modification or adjustment to a position, an employment practice, or the work environment that makes it possible for a qualified individual with a disability to perform the essential functions of the position." (Ex. 10 [Lucero Dep. Ex. 3, ADOT Americans with Disabilities Policy (DF01119-DF01127)] at 3; *see also* Ex. 3 at 72:24-75:5) The interactive process is a "flexible process through which ADOT's management and the employee or applicant with a disability discuss the request for accommodation in a good faith effort to identify the employee's or applicant's precise limitations and reasonable accommodations." (Ex. 10 at 2) Through the interactive process, the CRO seeks to understand an employee's limitations that impact their ability to perform the essential functions of their job. (Ex. 9 at 18:12-22; Ex. 3 at 34:19-35:5) The CRO accomplishes this through meeting with the employee, meeting with the employee's managers, and reviewing medical status reports ("MSR") received from the employee's medical provider(s). (Ex. 3 at 35:10-23) An MSR is submitted by the employee's medical provider to document the employee's physical or mental limitations and support

the employee's accommodation request. (Ex. 3 at 53:4-24; Ex. 10 at 7) At all times, ADOT maintains communication with the employee regarding the status and progress of their accommodation request. (Ex. 3 at 58:23-59:15; Ex. 9 at 32:4-33:3)

When ADOT's CRO receives an employee's accommodation request, it logs the request and sends the employee an acknowledgement of receipt. (Ex. 9 at 17:18-18:7) Next, the CRO reviews the employee's position description and schedules a meeting with the employee to initiate the interactive process. (Ex. 9 at 17:18-18:7; Ex. 3 at 23:18-24:3) During the first meeting of the interactive process, the CRO will come prepared with a list of questions for the employee that enables the CRO to better understand the employee's limitations and request for accommodation. (Ex. 9 at 39:2-23; Ex. 11 [First Interactive Meeting Questionnaire (DF01405-DF01408)]) Following the first meeting, the CRO asks the employee to provide an MSR from their medical provider(s). The CRO then meets with the employee's managers to gather more information about the employee's essential job functions. (Ex. 3 at 36:15-37:10; Ex. 9 at 49:10-20) Ultimately, after completing the interactive process, the CRO will issue a memorandum granting or denying an accommodation request. (Ex. 3 at 73:22-74:9; Ex. 10 at 8)

**C. ADOT Accommodated Cruz's First Accommodation Request.**

On March 8, 2022, Cruz submitted an ADA reasonable accommodation request form to ADOT's CRO. (Ex. 12 [Lucero Dep. Ex. 7, Cruz First Accommodation Request Log (DF00661-DF00669)]) Cruz sought an accommodation that would allow her to work from home permanently instead of working two days a week at ADOT's offices. (Ex. 13 [Lucero Dep. Ex. 2, First Accommodation Request (DF00429-DF00430)]; Ex. 1 at 64:7-13) In her accommodation request, Cruz identified her post-traumatic stress disorder ("PTSD") diagnosis as the reason she needed to work from home. (Ex. 13) Specifically, she stated that if she had "to return to the office, [she] would have huge difficulty performing any tasks"… because "[j]ust the idea of driving triggers [her] and brings up memories from past accidents, erratic drivers, and the fear of roadside bombs." (Ex. 13; Ex. 1 at 132:5-14) She claimed that "[d]riving to the office" and "[e]ven being

physically present at work two days a week would significantly trigger [her] disabilities" and interfere with her ability to perform her job, to the extent that "all of [her] job functions would be [*sic*] completely suffer." (Ex. 13)

On March 16, 2022, the CRO met remotely with Cruz to discuss her accommodation request, essential job functions, job-related restrictions, and possible accommodations that would enable Cruz to perform her essential job functions. (Ex. 14 at 1) During this meeting, Cruz was asked about her work responsibilities, what is preventing her from fulfilling them, and how she accommodates herself outside of work. (Ex. 14 at 1; Ex. 3 at 51:6-52:18; Ex. 9 at 25:20-26:18; Ex. 1 at 42:11-47:12) Cruz explained that driving to work triggers her PTSD and if her PTSD is triggered she needs to be in a space away from light and sound. (Ex. 14 at 1-2; Ex. 1 at 42:11-47:12; Ex. 3 at 51:6-52:18) Cruz also shared that having access to a dark room and driving outside of rush hour may help her. (Ex. 14 at 3; Ex. 1 at 144:11-145:6) At no point did the CRO ask Cruz about the cause of her PTSD or for details as to why she suffers from PTSD. (Ex. 3 at 85:13-90:23, 100:8-101:9; Ex. 9 at 39:2-43:21; Exhibit 11; Exhibit 14)

On March 17, 2022, the CRO asked Cruz to obtain MSRs from her medical providers. (Ex. 12 at 1) On April 5, 2022, the CRO met with Cruz's supervisors, Kristine Ward and Tim Newton, to discuss ways to accommodate Cruz's job-related restrictions. (Ex. 14 at 4-5; Ex. 3 at 111:3-117:2; Ex. 9 at 49:10-20) Ward and Newton suggested allowing Cruz to use a nursing room or Newton's office as needed and recommended various pre-work meditation practices to assist Cruz in fulfilling her essential duties. (Ex. 3 at 115:10-117:2; Ex. 14 at 6) In addition, Ward and Newton stated that they authorized Cruz to work remotely until May 31, 2022, for child-care reasons. (Ex. 14 at 5) On May 13, 2022, the CRO met with Ward and Newton to discuss the preliminary determination to offer Cruz an alternative accommodation allowing her to have a flexible schedule with as-needed breaks, utilize designated quiet areas as-needed, and arrive before her start time to decompress. (Ex. 14 at 6) On May 16, 2022, the CRO proposed the preliminary accommodation options to Cruz, who refused to try them out and stated that she could

not perform her job if she came into the office. (Ex. 14 at 7) In response to Cruz's insistence that she can only work remotely, the CRO continued to engage in the interactive process and seek to accommodate her. (Ex. 14 at 7-8) At all times during the interactive process, Cruz was allowed to work remotely. (Ex. 1 at 63:5-10, 72:6-73:2; Ex. 3 at 119:6-19; Ex. 5 at 3:4-10; Ex. 12 at 6; Ex. 14 at 9)

By the summer of 2022, the CRO had received multiple MSRs from Cruz's medical providers. (Ex. 12 at 5-7; Ex. 14) On August 2, 2022, the CRO issued its determination memo granting Cruz an accommodation to telework until February 13, 2023, and then to utilize a modified hybrid schedule from February 13, 2023, to May 13, 2023. (Ex. 14 at 10; Ex. 15 [Cruz Dep. Ex. 7, August 2 Memo Granting Accommodation Request (DF00060)]; Ex. 3 at 62:14-65:24) The CRO based its determination on the interactive meetings it held with Cruz, meetings with Cruz's supervisors, and the MSRs submitted by Cruz's medical providers. (Ex. 15) Most of Cruz's medical providers stated that, with ongoing treatment, their goal was for Cruz to be able to travel again, including to the office. (Ex. 16 [Cruz Dep. Ex. 14, MSR from Ned Bratspis (Cruz00108-Cruz00109)] at 2; Ex. 17 [Cruz Dep. Ex. 15, MSR from Glenda Weisman (Cruz00110-Cruz00113)] at 2; Ex. 18 [Cruz Dep. Ex. 16, MSR from Melynda Bosch (Cruz00118-Cruz00119)] at 2)

On February 9, 2023, the week before Cruz was to begin the modified hybrid schedule, the CRO granted her request to extend her telework schedule to March 13, 2023. (Ex. 19 [Cruz Dep. Ex. 24, February 2023 Accommodation Extension (DF00578)]) On March 10, 2023, the CRO granted Cruz an additional thirty-day extension on her telework schedule. (Ex. 20 [Cruz Dep. Ex. 20, March 2023 Accommodation Extension (DF00438)]) Then, on March 16, 2023, the CRO closed Cruz's first accommodation request and authorized her to telework while her second accommodate request is reviewed. (Ex. 21 [Cruz Dep. Ex. 21, First Accommodation Closure Notice (DF00577)])

**D. ADOT Accommodated Cruz's Second Accommodation Request.**

On March 6, 2023, Cruz submitted a second accommodation request seeking an accommodation to "[w]ork remote full time due to [her] homebound status and disabilities." (Ex. 22 [Cruz Dep. Ex. 9, Second Accommodation Request (DF00648)]) In her second request, Cruz stated that "[she] would not be able to perform any of [her] job functions if [she] had to be in an in-office work place." (Ex. 22) Cruz's second accommodation request focused on her inability to be in the work place. (Ex. 22; Ex. 23 [Second Accommodation Interactive Meeting Notes (DF00653-DF00656)] at 2) Cruz has testified that she can travel to places other than work, including distant shooting ranges, because she does not have to perform job functions when she arrives at her location. (Ex. 1 at 74:11-24, 85:13-23, 176:3-177:1)

On June 14, 2023, the CRO met with Newton regarding Cruz's second accommodation request and met with Cruz on June 20, 2023. (Ex. 23) Cruz refused to consider any accommodation outside of continued telework. (Ex. 23 at 2-3) On October 6, 2023, ADOT's CRO approved an ongoing accommodation allowing Cruz to continue to telework indefinitely. (Ex. 24 [Cruz Dep. Ex. 6, Memo Approving Ongoing Telework (DF00658-DF00660)])

**E. Cruz Did Not Apply for a Position in Lisa Pounds' Department.**

In August 2022, Cruz expressed interest in vacant manager positions in ADOT's Office of Continuous Improvement ("OCI"). (Ex. 1 at 169:1-172:4) Cruz emailed Lisa Pounds, an OCI Administrator, to inquire about the manager positions, the possibility of laterally moving out of FMS, and whether she could move to the OCI. (Ex. 25 [Cruz Dep. Ex. 23, Cruz Email with Lisa Pounds (DF00886-DF00887)]; Ex. 1 at 169:1-172:4) Cruz met with Pounds but never applied for the vacant manager positions, which were filled through a competitive recruitment process. (Ex. 26 [Civil Rights Complaint Dismissal (DF00880-DF00881)]) After the manager positions were filled, Cruz reached out to Pounds, who offered Cruz an opportunity to laterally transfer into a non-manager

role in OCI. (Doc. 31, ¶ 81; Ex. 27 [Cruz email declining an OCI opportunity (DF00884)]) Cruz declined the offer. (Ex. 27)

## II.    Legal Argument.

### A.  Summary Judgment Standard.

The State is entitled to summary judgment because the evidence demonstrates that Cruz has not established the essential elements of her case and "there is no genuine issue as to any material fact" regarding her claims. Fed. R. Civ. P. 56(C); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Specifically, Cruz's operative Second Amended Complaint ("SAC") cannot survive summary judgment because she has not shown that the State denied her reasonable accommodation or that she suffered an adverse employment action, let alone that she suffered an adverse employment action because of her disability or because she engaged in protected activity. "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). Cruz cannot rely solely upon unsupported conclusory allegations to create a material fact. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249 (1986).

### B.  Cruz Has Not Shown that the Stated Failed to Provide Her a Reasonable Accommodation.

In Counts IV and V of the SAC, Cruz alleges that the State discriminated against her by failing to engage in the interactive process in good faith (doc. 33, ¶¶ 158, 172 ) and denying her a reasonable accommodation (doc. 33, ¶¶ 155, 169) in violation of the ADA and the ACRA. There is "no stand-alone claim for failing to engage in the interactive process." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). "Rather, discrimination results from denying an available and reasonable accommodation." *Id.* Thus, to survive summary judgment on her failure to accommodate claim, Cruz "must show that (1) she is disabled; (2) she is a qualified individual,

meaning she can perform the essential functions of her job; and (3) [that the State] failed to provide a requested reasonable accommodation, failed to engage in an interactive process where a reasonable accommodation would have been possible, or terminated [her] because of her disability." *Cooper v. Dignity Health*, 438 F. Supp. 3d 1002, 1008 (D. Ariz. 2020), *aff'd*, No. 20-15377, 2021 WL 3667225 (9th Cir. Aug. 18, 2021); *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004) (stating that ACRA disability-discrimination provisions are generally identical to the relevant ADA provisions and require that the same elements be established).

This analysis begins and ends with the sole question: did Cruz receive a reasonable accommodation? *See Snapp*, 889 F.3d 1088 at 1095 (stating there can be no failure to accommodate claim where a plaintiff receives a reasonable accommodation). The answer, of course, is yes. Cruz not only received an accommodation that was more than reasonable, she received the accommodation that she desired. Cruz requested an accommodation to work remotely fulltime and the State has continually allowed Cruz to work remotely fulltime. (Exs. 15, 19, 20)

Cruz was expected to return to the office, alongside the other employees in FMS, two days a week in April 2022. (Ex. 7) She received permission to telework fulltime until the end of May 2022 for childcare reasons. (Ex. 14 at 5) She was then permitted to telework fulltime while she participated in the interactive process. (Ex. 21) From August 2, 2022, through March 13, 2023, she had an accommodation that authorized her to telework fulltime. (Ex. 15, 19, 20) On March 16, 2023, Cruz received permission to continue teleworking fulltime while participating in the interactive process on her second accommodation request. (Ex. 21) On October 6, 2023, Cruz received her second accommodation permitting her to telework fulltime indefinitely. (Ex. 24.) To this day, Cruz is working remotely fulltime pursuant to the accommodation that she received on October 6, 2023.

ADOT has sought to accommodate Cruz at every opportunity, and has done so effectively. Accordingly, Cruz cannot maintain a failure to accommodate claim and summary judgment should be granted in ADOT's favor.

### C. Cruz's Disparate Treatment and Retaliation Claims Fail Because She Has Not Shown that She Suffered an Adverse Employment Action.

In Counts I, II, and III of the SAC, Cruz alleged claims for disparate treatment discrimination on the basis of her disability in violation of the ADA, the ACRA, and the Rehab Act. (Doc. 33, ¶¶ 109-146) To survive summary judgment on this claim, Cruz must establish that (1) she is disabled; (2) she is a qualified individual, meaning that she can perform the essential functions of her job with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Jefferson v. Time Warner Cable Enters. LLC*, 584 F. App'x 520, 522 (9th Cir. 2014); *Liu v. DeJoy*, 664 F. Supp. 3d 1030, 1041 (C.D. Cal. 2023) (same re Rehab Act); *Bodett,* 366 F.3d at 742 (9th Cir. 2004) (stating that ACRA disability-discrimination provisions are generally identical to the relevant ADA provisions and require that the same elements be established).

In Counts VI and VII of the SAC, Cruz alleged claims for retaliation in violation of the ADA and the ACRA. (Doc. 33 at 175-86) To survive summary judgment on this claim, Cruz must establish a prima facie case of retaliation by showing "that: (1) [] she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004); *see* 42 U.S.C. § 12203(a); *see also Israel v. U.S. Bank, NA*, 653 F. Supp. 3d 685, 706 (D. Ariz. 2023) (ACRA is modeled after federal employment discrimination laws).

Cruz's disparate treatment and retaliation claims both fail because she has not established that she suffered an adverse employment action under either theory of relief.

**i.  The State has not taken any action against Cruz that materially altered the terms and conditions of her employment.**

In the context of a disparate treatment claim, "[a]n adverse employment action is one that materially alters the 'terms and conditions' of the plaintiff's employment." *Mamola v. Group Mfg. Servs.*, No. CV-08-1687-PHX-GMS, 2010 WL 1433491, at *6 (D. Ariz. Apr. 9, 2010) (citing *Kang v. U. Lim. Am., Inc.*, 296 F.3d 810, 819 (9th Cir. 2002)). Cruz has no evidence of any action by the State that would correspond to this definition.

**1.  Cruz was not denied a lateral transfer opportunity.**

Cruz complains that she was denied "a lateral transfer opportunity" because of her disability. (Doc. 33, ¶¶ 120, 132, 142). The record shows otherwise. Cruz expressed interest in a management position in the OCI and coordinated a meeting with Pounds to learn more about the position. (Ex. 25) Two OCI positions were posted and filled through a competitive recruitment process. (Ex. 26) Cruz did not apply for either of them. (Ex. 26) Because she did not complete the application process, she has no claim that the State foreclosed an opportunity to transfer, let alone that it did so because of her disability. *See Tagupa v. Bd. of Directors*, 633 F.2d 1309, 1312 (9th Cir. 1980) (finding that summary judgment for potential employer was appropriate because the plaintiff did not complete the employment application process).

**2.  Participating in the interactive process to receive an accommodation is not an adverse action.**

Cruz also claims that being required to participate in the interactive process was an adverse employment action. (Doc. 33, ¶¶ 120, 132, 142) She complains that had she not had a disability that she wanted accommodated, she would not have had to undergo the interactive process. (*Id.*) In this circular reasoning, she failed to acknowledge that the interactive process enabled her to receive an accommodation and is the same process that all individuals seeking an accommodation experience. (Ex. 3 at 21:15-24:13, 34:19-37:10, 72:24-75:5; Ex. 9 at 18:12-22, 17:18-18:7, 39:2-23, 49:10-20; Ex. 10) Cruz has

not alleged (much less shown) that the interactive process "changed her hours, wages, benefits, or other conditions of her employment." *Wood v. Univ. Physicians Healthcare*, No. CV-13-00063-PHX-JAT, 2014 WL 3721207, at *9 (D. Ariz. July 28, 2014), *aff'd*, 657 F. App'x 643 (9th Cir. 2016). "As a result, [the interactive process] cannot amount to an adverse employment action." *Id*. Moreover, even if ADOT's interactive process "altered the essential terms of [Cruz]'s employment in some unspecified way, [ADOT]'s need to accommodate [Cruz]'s disability constitutes a legitimate non-discriminatory reason." *Id.* Accordingly, ADOT did not discriminate against Cruz by engaging in the interactive process with her.

### 3. Ward's alleged comments about Cruz's performance and attendance are not adverse employment actions.

Cruz also complains that Ward made negative comments about Cruz's "absence at work events, her desire for remote work, and her participation in the complaint process." (Doc. 33, ¶¶ 120, 132, 142) Even if she did (which Cruz has not established) Ward's alleged statements not amount to an adverse employment action. The Ninth Circuit has held that "a supervisor's laughing and stating that the plaintiff 'got him on sexual harassment charges,' the supervisor's hostile stares, and increased criticism were insufficient to preclude summary judgment" for the employer. *Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1189 (9th Cir. 2005) (cleaned up); *see also Manatt v. Bank of Am., NA*, 339 F.3d 792, 803 (9th Cir. 2003) (stating that mere ostracism in the workplace is not an adverse action); *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998) (finding that the plaintiff did not suffer an adverse action when he was bad-mouthed and verbally threatened).

### 4. Cancelled meetings are not adverse employment actions.

Cruz also complains that Ward cancelled some one-on-one meetings and did not include her in some meetings where "information relative to job assignments" was discussed. (Doc. 33, ¶¶ 120, 132, 142) Even if Cruz's allegations are true, they would not constitute an adverse employment action. "Not every employment decision amounts to

an adverse employment action." *Foraker v. Apollo Grp., Inc.*, 427 F. Supp. 2d 936, 941–42 (D. Ariz. 2006), *aff'd*, 302 F. App'x 591 (9th Cir. 2008)) "Termination, negative employment references, undeserved negative performance reviews, and denial of promotions [may] qualify as adverse employment actions." *Id.* (internal quotations omitted). "In contrast, mere inconveniences or an alteration of job responsibilities do not qualify." *Id.* (internal quotations omitted). Having a one-on-one cancelled or not being included in a conversation that might be relevant to one's job duties is, at most, a mere inconvenience. In any case, Cruz has no evidence that not being included in some meetings with Ward changed hours, wages, benefits, or any other condition of her employment. *See Woods*, 2014 WL 3721207, at *9. Accordingly, even if Ward missed some meetings with her, Cruz did not experience an adverse employment action.

### ii.    The State has not taken any action against Cruz that has deterred her from engaging in protected activity.

Cruz alleged that she "suffered retaliation for seeking an accommodation, participating in ADOT's complaint process, and/or filing a complaint with the Arizona Attorney General, Civil Rights Division, and the Equal Employment Opportunity Commission." (Doc. 33, ¶¶ 177, 183.) Cruz also has alleged the same purported adverse employment actions in support of her retaliation claims that she did in support of her disparate impact discrimination claims. (*Compare id. with* doc. 33, ¶¶ 120, 132, 142) In the context of retaliation, "an adverse employment action is an action that is reasonably likely to deter employees from engaging in protected activity." *Wood*, 2014 WL 3721207, at *11. As discussed above, the State's supposed adverse actions did not materially alter the terms and conditions of Cruz's employment. Setting rationality considerations to one side, it is unclear what would or could deter Cruz from engaging in protected activity against the State. Obviously, nothing that ADOT has done deterred it. Even after being granted the on-going accommodation of fulltime telework on October 6, 2023 (Ex. 24), Cruz—who was and is a continuing ADOT employee—nonetheless filed this lawsuit on November 14, 2023. (Doc. 1.) Practically speaking, the Court should

determine that Cruz has not been deterred and therefore has not experienced actions that would deter her from pursuing protected activity against her employer. Accordingly, the State is entitled to judgment on Cruz's retaliation claims.

### D. The State Has Sovereign Immunity.

The Eleventh Amendment bars all of Cruz's claims arising under the ADA to the extent that she seeks money damages. *See Board of Trustees of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 368 (2001) (holding that the Eleventh Amendment bars claims for money damages under Title I of the ADA against a state); s*ee also Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1270 (9th Cir. 2009) ("[W]e conclude that ADA retaliation claims are redressable only by equitable relief.").

### III.    Conclusion.

For the foregoing reasons, the Court should Defendant's motion and enter judgment in its favor.

Respectfully submitted this 1st day of August, 2025.

Arizona Attorney General's Office

/s/ Ann Hobart
Ann Hobart
Michelle Kunzman
Jordan Kendall
Assistant Attorneys General
Attorneys for Defendants

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing this 1st day of August, 2025, and service on:

Troy Froderman
Rita Gara
FR Law Group, PLLC
4745 N. 7th Street, Suite 210
Phoenix, AZ 85014
tfroderman@frlawgroup.com
rgara@frlawgroup.com
tdiefenbach@frlawgroup.com
Attorneys for Plaintiff

COPY WILL BE MAILED on the 4th day of August, 2025, to:

The Honorable Sharad H. Desai
U.S. District Court, Suite 410
401 W. Washington Street, SPC 61
Phoenix, AZ 85003-2158

/s/ Ann Hobart