Troy B. Froderman (012717)
Rita Gara (037349)
FR LAW GROUP PLLC
4745 N. 7th Street, Suite 210
Phoenix, AZ 85014
602.566.7425
tfroderman@frlawgroup.com
rgara@frlawgroup.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Rebecca Cruz,<br><br>                                    Plaintiff,<br><br>vs.<br><br>State of Arizona, Department of<br>Transportation,<br><br>                                    Defendant. | Case No.  2:23-cv-02383-PHX-SMM<br><br>**PLAINTIFF REBECCA CRUZ'<br>OPPOSITION TO DEFENDANT<br>STATE OF ARIZONA,<br>DEPARTMENT OF<br>TRANSPORTATION'S  MOTION<br>FOR SUMMARY JUDGMENT** |

Plaintiff, Rebecca Cruz ("Cruz"), respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 56 to deny the State of Arizona, Department of Transportation's ("ADOT") Motion for Summary Judgment ("ADOT MSJ", Doc. 49). This Opposition is supported by the following Memorandum of Points and Authorities and attached exhibits. Cruz also incorporates by reference herein, the facts and arguments in her Motion for Summary Judgment or Partial Summary Judgment in the Alternative, her Separate Statement of Facts, and related Exhibits ("Cruz MSJ", "Cruz SOF", Doc. 50 & Doc. 51 respectively).

i

## TABLE OF CONTENTS

**Page(s)**

I.   RESPONSES AND SUPPLEMENTAL FACTS RELATIVE TO ADOT'S FACTUAL BACKGROUND...................................................................................1

   A.  Cruz' Position and Performance.........................................................................1

   B.  ADOT's Civil Rights Office and Interactive Process.......................................2

   C.  The Lateral Transfer..........................................................................................7

II.  SUMMARY JUDGEMENT STANDARD...................................................................8

III. ADOT FAILED TO PROVIDE A REASONABLE ACCOMMODATION..............8

IV.  CRUZ HAS SUFFERED ADVERSE EMPLOYMENT ACTION.........................9

   A.  The State Has Taken Action That Materially Altered the Conditions of Cruz' Employment.......................................................................................................9

       i.   Indisputable Facts Establish that Cruz Was Denied a Lateral Transfer Opportunity..................................................................................................9

       ii.  ADOT's Implementation of the Interactive Process Constitutes an Adverse Action Against Cruz..................................................................10

       iii. Ward's Actions Related to Cruz Constitute Adverse Actions.............11

   B.  The Fact That Cruz Pursued Her Claims in Spite of ADOT's Adverse Actions Does Not Exculpate ADOT..........................................................................13

V.   CONCLUSION...........................................................................................................14

**TABLE OF AUTHORITIES**

**Page(s)**

*Burlington Northern & Santa Fe Ry. v. White*,

    548 U.S. 53 (2006)........................................................................................................9, 11, 13

*Celotex Corp. v. Catrett*,

    477 U.S. 317, 323 (1986)......................................................................................................8

*Fitzsimmons v. City of Phoenix*,

    2008 U.S. Dist. LEXIS 42281, 8 (D. Ariz. May 28, 2008)................…….....................1

*Ray v. Henderson*,

    217 F.3d 1234, 1243 (9th Cir. 2000)............................................................................11, 13

*Snapp v. United Transportation Union*,

    889 F. 3d 1088, 1095 (9th Cir. 2018)....…………...............................................................8


Statutes          **Page(s)**

42 U.S.C. § 12112(b)(5)...………………………..........……….…………….9

A.R.S. § 41-1463(E)…………………………………………….....................…..9

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     RESPONSES AND SUPPLEMENTAL FACTS RELATIVE TO ADOT'S FACTUAL BACKGROUND**

    **A. <u>Cruz' Position and Performance</u>**

A sticking point for ADOT as it evaluated Cruz' request for an accommodation is that the position Cruz was hired for was, according to ADOT, always meant to be an in-office position but for COVID arrangements that saw employees working from home. ADOT has viewed Cruz' accommodation request to work from home through the lens of "but she knew this was an in-office position when she was hired". (See Doc. 49, ADOT MSJ at 2:22-24 & Ex. GG, ADOT Position Statement to EEOC at DF00013). This is problematic as it bears no relevance to any reasonable accommodation request evaluation. Instead, it reveals ADOT's motivation and delay in granting Cruz' request. ADOT  fought  Cruz' request to work from home because, Kristine Ward didn't want Cruz to be a remote worker and because Cruz was hired to be in-office. (Doc. 51, Cruz SOF at ¶¶ 52-55).  This does not constitute a proper analysis of Cruz' accommodation request, nor does it constitute a proper basis for denial. *Fitzsimmons v. City of Phoenix*, 2008 U.S. Dist. LEXIS 42281, 8 (D. Ariz. May 28, 2008)(Noting that an employer must grant an accommodation unless it can show that the accommodation would cause an undue hardship on the business.)

While ADOT provided Cruz' performance evaluation statistics from her first year at ADOT, it did not include subsequent performance evaluation statistics which have increased since her first-year evaluation. Cruz received an overall evaluation rating of 3.75 out of 5, including a score of 4 (often exceeds expectations) in the area related to Cruz's "Results" that she accomplished. (Ex. HH, Cruz' 2022 Performance Evaluation, Bates No. DF01050-

DF01054.) Cruz received an overall score of 4 out of 5 for the period of April 1, 2023 through March 31, 2024, indicating that Cruz often exceeds expectations, adding strong value and/or contribution to the success of her team, division and/or agency goals. (Ex. NN, September 16, 2025 Declaration of Rebecca Cruz at ¶¶ 5-6.)

### B.  ADOT's Civil Rights Office and Interactive Process

Despite ADOT's claim that its Civil Rights Office ("CRO") employees "are trained to manage a variety of civil rights compliance issues, complaints, and requests" (Doc. 49, ADOT MSJ at 3:10-14.), the level, adequacy and nature of such training leaves much to be desired with respect to the CRO employees' ability to safely, timely and adequately facilitate ADA accommodation requests via the interactive process. ADOT has admitted that none of the individuals involved in creating the terms of Cruz' temporary accommodation of August 2, 2022 had any medical training. (Ex. II, Answers to Plaintiff Rebecca Cruz' Interrogatories to Defendant State of Arizona (Set One) at 2:14-23.) This lack of training perhaps explains why ADOT fashioned accommodations that were in direct contradiction to what every single one of Cruz' medical professionals indicated was medically necessary. Physician's Assistant Kristin Plyer recommended permanent remote work, licensed professional counselor Ned Bratspis recommended permanent remote work, Dr. Glenda Weisman, medical doctor, recommended permanent remote work, licensed clinical social worker and certified Clinical Trauma Professional Melynda Bosch recommended permanent remote work. (Ex. JJ, Medical Status Reports ("MSR's")) In direct opposition to the medically recommended accommodation, ADOT, with no explanation or medical support fashioned its own accommodations that required Cruz to return to the office after a short duration of remote work. (Ex. KK, ADA Determination Memo dated August 2, 2022; Ex. LL, February 9, 2023

Temporary Extension of Accommodation) What is even more remarkable is that they denied her request for permanent remote work without establishing that the accommodation would cause ADOT an undue hardship. (Ex. MM, ADOT's Answer's to Cruz' Requests for Admission, Request and Answer No. 6, 3:1-5) Worse still, ADOT possessed medical documentation that plainly indicated that the accommodations ADOT fashioned for Cruz, requiring her to come back to the office, were medically unsafe for Cruz. Some examples of such plain language include:

- Dr. Weisman: Cruz' limitations are permanent (Ex. JJ at DF00113); when triggered, she should not drive to work unless it is an emergency (Ex. JJ at DF00114); patient has reached maximum medical improvement (Ex. JJ at DF00115); "Patient unable to tolerate the drive to & from work as it triggers her PTSD & eventually a migraine. She can accomplish her full duties if allowed to work remotely exclusively" (Ex. JJ at DF00116); no other accommodation besides permanent remote work is appropriate, Cruz will likely need lifelong accommodations (Ex. OO at DF00122); "Mental Health is difficult to measure but the struggle these individuals, particularly veterans that have offered their service is REAL and should be taken seriously." (Ex. OO at DF00122)

- Ned Bratspis, MA, LMFT: Cruz' impairment is permanent (Ex. JJ at DF00068); when Cruz' impairment is active, she suffers "moderate to severe anxiety episodes when spending time in public places and when traveling in vehicles. The aftermath of these episodes last [ma]ny hours and requires lengthy time periods of safety from triggers in order to regain emotional equilibrium. Driving to and from work

3

or even being driven to work can be harrowing." (Ex. JJ at DF00068); "If [Cruz] is required to work in person at an office, PTSD will be tr[.]iggered by travels to and from the onsite work station." (Ex. JJ at DF00069); "I know of no other alternative work accommodation [to permanent remote work] that will work as well at this time." (Ex. OO at DF00125)

- Melynda Bosch LCSW: Cruz' impairment is permanent (Ex. JJ at DF00117); "Patient can complete tasks in remote capacity. If patient has to travel and work in person this will cause extreme mental health symptoms and should be avoided at all costs."; "I am unable to safely recommend any other alternative work accommodation [to permanent remote work] at this time." (Ex. OO at DF00135)

As the Court considers the pending Motions for Summary Judgment in this matter, ADOT still has only offered Cruz "telework accommodation...on a temporary basis". (Ex. PP, October 6, 2023 Accommodation Decision)

While ADOT, in its MSJ, carefully detailed for the Court ADOT's interactive process, how it is designed to gather information, namely an employee's limitations, their accommodation request, the employee's essential job functions, and sometimes, as in this case, MSRs and Supplemental MSR's from the employee's medical provider(s), ADOT failed to detail the awful reality of the interactive process for Ms. Cruz. Ms. Cruz' first interview with Danielle Valentine and Joanna Lucero was traumatic and triggering for Ms. Cruz and went beyond the bounds of necessary information gathering. (Ex. QQ, August 1, 2025 Declaration of Ms. Cruz at ¶¶ 9-10, 18-28; Ex. RR at DF00456) ADOT's CRO employees went beyond seeking information related to Cruz' ability to perform the essential duties of her job with and/or without an accommodation and asked curiosity questions about

4

why Cruz had PTSD, causing Ms. Cruz to have to re-live some of the most traumatic experiences of her life. (Ex. QQ, August 1, 2025 Declaration of Ms. Cruz at ¶¶ 21-28) When Ms. Cruz complained about the way her interview was conducted, and sought changes to the process, her concerns were essentially ignored and dismissed. (Ex. RR at DF00456; Ex. QQ, August 1, 2025 Declaration of Ms. Cruz at 27-28)

Despite having interviewed Cruz, speaking with her supervisors, and reviewing significant, consistent, and thorough medical documentation from Cruz' medical providers, it took ADOT from March 8, 2022 through August 2, 2022 to provide Cruz with her first written accommodation, temporary in nature and against all medical advice.[1] (Doc. 49, ADOT MSJ at 4:17-6:18; Ex. JJ, Ex. OO) There was no reason for that accommodation decision to take so long. A majority of the MSRs and Supplemental MSRs were received by ADOT in April of 2022. Ned Bratspis, MA, LMFT, had submitted his MSR and Supplement by April 27 of 2022 and a second Supplement by June 29, 2022, Kristin Plyer, PA, had submitted her MSR and Supplement by April 27, 2022, Dr. Weisman had submitted her MSR and Supplement by July 5, 2022, Melynda Bosch had submitted her MSR and Supplement by July 8, 2022. (Ex. JJ, Ex. OO) Based on the nature and thoroughness of each MSR and Supplement, as well as ADOT's lack of any undue hardship finding, it should have made a decision much earlier than August of 2022. It certainly didn't need to wait for additional MSRs and/or Supplements when the medical documentation already received from providers Bratspis and Plyer in April of 2022 were consistent in their recommendations and support for

---

[1] ADOT originally verbally denied Cruz' accommodation request outright, telling Cruz to use the "nursing mother's" room if she needed a break to deal with her disability symptoms. (Ex. QQ, August 1, 2025 Declaration of Ms. Cruz, ¶ 42)

Cruz' requested accommodation. (Ex. JJ at DF00066-67, DF00068-69; Ex. OO at DF00084-89, DF00071-73, DF00099-102, DF00123-130)

After that initial temporary granting of an accommodation that did not address either Cruz' nor her medical providers' medical concerns, ADOT caused Cruz to suffer through a significant period of uncertainty as it extended Cruz' accommodation in an inconsistent and ad hoc basis. (Ex. QQ, August 1, 2025 Declaration of Ms. Cruz at ¶¶ 45-47). Some extensions were only granted for a month, while others were not given a specific end date rather were conditioned upon ADOT's continued review of Cruz' accommodation request. (Doc. 49, ADOT MSJ at 6:6-7:17).

ADOT re-packages Cruz' March 6, 2023 accommodation request as a "new" request, possibly to mitigate its undue delay in evaluating Cruz' request, however, and as argued and documented in Cruz's MSJ, the new request was not "new", rather, it represented Cruz' attempt to avoid the necessity of repeated short-term accommodations that required her to repeatedly ask for extensions – her request was the same. (Doc. 50, Cruz MSJ at 5:22-6:6).

ADOT asserts that in October of 2023, it finally approved an "ongoing" accommodation allowing Cruz to "telework indefinitely". (Doc. 49, ADOT MSJ at 7:12-17). This "approval" is simply another example of ADOT failing to adequately address Cruz' accommodation request, as it relayed its "approval" in such a manner that invites further confusion and uncertainty for Cruz. This "ongoing" accommodation is clearly only granted, by the plain words of ADOT's letter, on a "temporary basis". (Ex. PP, DF00658).

ADOT's management of Cruz' request, including the excessive time it took to evaluate her request, its continued denial of a permanent accommodation, as well as the manner in

which the CRO conducted its interviews with Cruz violate ADOT's policies. (Doc. 51, Cruz SOF at ¶¶ 9-12 & 44-48)

Finally, and perhaps in a manner exposing its true attitude towards Cruz, her disabilities, and her need for an accommodation, ADOT, in its MSJ, blames Cruz for "refusing to consider any accommodation outside of continued telework". (Doc. 49, ADOT MSJ at 7:12-14) ADOT's attitude is quite telling in light of all the medical documentation it has received detailing Cruz' impairments and disabilities, as well as all the medical opinions and diagnoses which support her request. It is also appalling that ADOT paints Cruz as difficult in light of the fact that it has not identified her request as constituting any undue hardship. It illuminates, as clear as a confession, that ADOT simply didn't like the telework option Cruz requested but had no legal basis to deny it. It also elucidates why this litigation is necessary despite ADOT's insistence that it has granted her the requested accommodation. That October 2023 letter plainly grants Cruz a temporary, not permanent accommodation. That, coupled with ADOT's treatment of Cruz during the interactive process, raises a very real fear that once the protection of the lawsuit is gone, her accommodation will cease as well. Absent Cruz' requested relief and a legal determination that ADOT has failed to engage in the interactive process in good faith, Cruz will again be subject to the whims of the CRO office, its inconsistent timeframes, triggering interview style, delays in decision making, burdensome medical documentation requirements and failure to abide by its own policies relative to the interactive process.

### C. **The Lateral Transfer**

ADOT disingenuously excuses its discrimination of Cruz with respect to Cruz' request to laterally transfer to Lisa Pounds' department, on the basis that Cruz never formally applied

7

for the position. (Doc. 49, ADOT MSJ at 7:18-8:2) This is a blatant pretextual excuse as exposed by ADOT's own factual assertions that after the positions at issue were filled by others, Pounds "offered Cruz an opportunity to laterally transfer into a non-manager role" in that same department (Doc. 49, ADOT MSJ at 7:26-8:1). Cruz had never applied for that position either, yet it was still offered to her (at a lower position grade level and $40,000.00 pay cut). (Ex. QQ, August 1, 2025 Declaration of Ms. Cruz at ¶ 70-73). Cruz, for brevity's sake, also incorporates her related arguments and support contained in her MSJ and related documents. (Doc. 50, Cruz MSJ at 6:25-7:26)

## II.    SUMMARY JUDGMENT STANDARD

A court shall only grant summary judgment where there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) For purposes of a motion for summary judgment, where a genuine dispute is found to exist with respect to whether an employer has engaged in the interactive process in good faith, the "burden shifts to the employer to prove the unavailability of a reasonable accommodation". *Snapp v. United Transportation Union*, 889 F. 3d 1088, 1095 (9th Cir. 2018)

## III.    ADOT FAILED TO PROVIDE A REASONABLE ACCOMMODATION

ADOT would like to justify its failures during the interactive process by simply saying, in the end, we gave Cruz what she wanted. The problem is, it didn't. And it isn't just that ADOT didn't give Cruz what she wanted, it failed and continues to fail to provide Cruz with a reasonable accommodation. It failed to engage in the interactive process in good faith and in a safe manner for Cruz, and there is an imminent probability that Cruz will be required to suffer through it again without limitation. Despite all medical professionals recommending, in conjunction with Cruz' request, that she receive a permanent accommodation, ADOT has

once again only provided Cruz with an accommodation on a "temporary basis". (Ex. PP, October 6, 2023 Accommodation) This accommodation leaves Cruz open to repeated forced participation in the very interactive process that has been so damaging to her. Damage that ADOT refused to acknowledge when Cruz raised her concerns after her CRO interview. (Ex. RR, Cruz Email Complaint)

Based on the current accommodation, Cruz has no protection from a repeat of the same triggering process, and absent relief, ADOT has every incentive to continue to create difficult and lengthy hurdles for Cruz to overcome to maintain her temporary accommodation. ADOT discriminated against Cruz under the ADA and ACRA when it failed to grant Cruz her accommodation request and did not establish that the accommodation posed an undue hardship. 42 U.S.C. § 12112(b)(5) & A.R.S. § 41-1463(E). ADOT is not entitled to summary judgment on these claims.

## IV.    CRUZ HAS SUFFERED ADVERSE EMPLOYMENT ACTION

### A.    The State Has Taken Action That Materially Altered the Conditions of Cruz' Employment

Whether an action is adverse depends on the particular facts of a case and are judged from the standpoint of whether a reasonable employee would be deterred from registering a complaint. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006).

#### i.    Indisputable Facts Establish That Cruz Was Denied a Lateral Transfer Opportunity

As discussed above, and in her MSJ, Cruz establishes through facts and reasonable inferences that not only that she was denied a lateral transfer opportunity, but that it was because of her participation in the accommodation request process. As discussed above,

9

ADOT's reason for Cruz' lost opportunity to transfer is a pretextual one. ADOT claims Cruz lost out on the lateral transfer because she didn't formally apply. But, as admitted by ADOT in its own MSJ, Cruz was then later offered a lesser position without formally applying. Further, and as discussed in her MSJ, Cruz established that Pounds was open to the idea of Cruz transferring and reached out to Human Resources personnel to discuss the logistics. During the related email communications, Cruz' ADA accommodation was brought up and Chief Human Resources Officer Wendy Brazier said that the transfer would affect Cruz' accommodation. (Doc. 50, Cruz MSJ at 6:25-7:26; Doc. 51, Cruz SOF at ¶¶ 74-84). Without further contact to Cruz until after they had filled the discussed positions, the powers that be decided not to offer Cruz the opportunity to transfer. *Id*. ADOT's excuse simply rings false in light of the indisputable evidence. ADOT was obviously aware of and discussing Cruz' desire to lateral but never told her to formally apply. They apparently had a group discussion about Cruz' accommodation and how it would be affected, without including or apprising Cruz. They filled the lateral positions without getting back to Cruz nor telling her she wasn't eligible due to a failure to apply, and then ultimately offered her a less desirable position in an obvious response to her inquiry and without a formal application. Taking into account a totality of the circumstances and all reasonable inferences, Cruz was discriminated against and suffered an adverse action that materially altered conditions of her employment in that she was unlawfully denied an opportunity to be fairly considered for the lateral transfer. This loss of employment opportunity constitutes an adverse action against Cruz.

        ii.    <u>ADOT's Implementation of the Interactive Process Constitutes an Adverse Action Against Cruz</u>

An adverse employment action is one that could dissuade a reasonable employee from engaging in a protected activity as opposed to a more trivial harm. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 68 (2006); *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) The way ADOT conducted itself during the interactive process could certainly dissuade a reasonable employee from seeking his or her requested accommodation, or maintaining his or her employment with ADOT if it meant exposing themselves to the same things Cruz endured and may continue to endure absent relief. For example, a reasonable employee who suffered any sort of mental health disability may choose not to seek an accommodation if it must be interviewed by staff who are insensitive to the harm they cause by asking inappropriate, irrelevant and triggering questions about why the employee has a mental health impairment and what caused the mental health impairment. Additionally, an employee may not want to endure the repeated and unnecessary extension requests that ADOT put Cruz through, as the uncertainty created by short-term extensions can cause (and did in Cruz' case) anxiety and a feeling of job insecurity. These issues are obviously heightened for someone who already suffers from anxiety and PTSD. These issues are also heightened when an employee raises concerns about her treatment during the process to the people conducting the interactive process, identifying why it was unsafe for her based on her impairment, and her concerns are ignored. How can ADOT expect trauma-experienced employees to feel safe participating in such a process?

These adverse actions are distinguishable from ADOT's suggestion that Cruz simply objects to participating in the interactive process. It is not the interactive process in and of itself that is adverse, it is ADOT's administration of the process that has caused Cruz harm.

iii.    Ward's Actions Related to Cruz Constitute Adverse Actions

11

When taken in totality, Wards actions against Cruz constitute a series of adverse actions that were reasonably likely to deter an employee from either requesting an accommodation or filing a complaint of discrimination or retaliation. Cruz, as a result of engaging in the protected activities of requesting an ADA accommodation and complaining about discrimination and retaliation, has endured a negative change in attitude, demeanor and style of communication towards her from Ward as outlined in her MSJ and incorporated here by reference for brevity. (Doc. 50, Cruz MSJ 10:8-27). Ward embarrassed Cruz by complaining about "investigations" in front of a group of Cruz' co-workers, in a clear nod to Cruz' recent renewal (one day prior to the meeting) of her request for a permanent accommodation. (Ex. QQ, August 1, 2025 Declaration of Ms. Cruz at ¶¶ 79-84) This caused Cruz to worry about her professional reputation. (Ex. QQ, August 1, 2025 Declaration of Ms. Cruz at ¶¶ 79-84) Ward also cancelled one-on-one meetings that she used to hold with Cruz and uninvited Cruz to meetings causing Cruz to be inadequately briefed about certain assignments. (Ex. QQ, August 1, 2025 Declaration of Ms. Cruz at ¶¶ 54-56)

Evidence of retaliation against Cruz after she engaged in protected behavior is also highlighted by Ward and Tim Newton's discussion about altering Cruz' performance evaluation because of her accommodation request. (Doc. 51, Cruz SOF at ¶¶ 62-71) It is also evident in Newton's denial of Cruz' request to flex one of her in-office days to reduce her in-office time, while allowing others to do so. (Ex. QQ, August 1, 2025 Declaration of Ms. Cruz at ¶¶ 57-61).

While taken individually, each action may not appear substantial (although Cruz asserts that several of the identified actions *are* substantial) but when viewed in their totality, Cruz was subject to a series of adverse actions because of her engagement in protected

12

activity. She was denied an employment opportunity, she was subject to a plan to artificially adjust her performance evaluation, she was not allowed to use flex days in the same manner as others in her department were, she was embarrassed publicly by Ward's frustration over the "investigations", and she was subjected to negative treatment by Ward. These actions are consistent with actions multiple courts, including the 9th Circuit have found to be adverse. *Ray v. Henderson*, 217 F.3d 1234, 1240 - 1243 (9th Cir. 2000)(Examining the types of actions the various circuits have found to constitute adverse actions) Actions like disadvantageous transfers or assignments, unwarranted job evaluations, requiring an individual to jump through hoops to obtain an employment benefit, giving an unfavorable job reference even where inconsequential, have all been found to constitute adverse employment actions. *Id.* at 1241. The adverse actions experienced by Cruz are similar to those actions found to be adverse in other cases and therefore support a request that ADOT's motion be denied

### B.  The Fact That Cruz Pursued Her Claims in Spite of ADOT's Adverse Actions Does Not Exculpate ADOT

Adot pointing out that its own actions towards Cruz have failed to deter Cruz from pursuing her discrimination/retaliation claims is (thankfully) not the standard for evaluating whether an employee has suffered an adverse employment action. Rather, it provides another glimpse into ADOT's mentality as it laments that "it is unclear what would or could deter Cruz from engaging in protected activity against the State..." (Doc. 49, ADOT MSJ at 13:23-25) Cruz is not to be punished because she had the courage and fortitude to pursue enforcement of her rights, no matter how difficult that battle may be. Rather, the standard, as elucidated above, is whether a reasonable employee would be deterred from registering a complaint. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006). This Court

13

should not grant ADOT's Motion for Summary Judgment simply because it couldn't knock Cruz out of the fight.

## V.    CONCLUSION

For the reasons set forth above, Ms. Rebecca Cruz respectfully asks this Court to deny ADOT's Motion for Summary Judgment.

RESPECTFULLY SUBMITTED this 16th day of September 2025.

FR LAW GROUP PLLC

By: _/s/ Troy B. Froderman_
    Troy B. Froderman, Esq.
    Rita Gara, Esq.
    *Attorneys for Plaintiff*

14

**CERTIFICATE OF SERVICE**

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing on this 16th day of September 2025, and service on:

Kristin K. Mayes, Attorney General
Ann Hobart, Esq.
Michelle Kunzman, Esq.
Jordan Kendall, Esq.
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004
Ann.Hobart@azag.gov
Michelle.Kunzman@azag.gov
Jordan.Kendall@azag.gov
EmploymentLaw@azag.gov
*Attorneys for Defendant*


/s/   Tamber Diefenbach

15